UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA HAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV791 CDP |
| | ) | |
| VERIMED HEALTHCARE | ) | |
| NETWORK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Cynthia Haines is a medical doctor who worked as an independent contractor for defendant VeriMed, writing and editing articles that VeriMed then sold to companies that run medical websites. Haines asserts antitrust and tort law claims against VeriMed, alleging that VeriMed unlawfully constrained Haines' employment opportunities by entering into no-hire agreements with VeriMed's clients. VeriMed has moved to dismiss Haines' complaint. Because I conclude that the injury Haines asserts is not of the type that the antitrust laws were designed to remedy, I will grant VeriMed's motion to dismiss Haines' antitrust claims. I will, however, deny VeriMed's motion with respect to Haines' tort claims.

## Background Facts

The following facts are asserted in plaintiff's Second Amended Complaint. Dr. Cynthia Haines is a medical doctor and president of Haines Medical

Communications, Inc. Working as an independent contractor, Haines supplies and reviews written content for publication on medical websites. Haines began her business in 2004 by initially supplying articles to the website WebMD. Since that time Haines has expanded her business, working for several other websites.

In 2006, Haines entered into a relationship with defendant VeriMed Healthcare Network. Unlike websites like WebMD, VeriMed does not directly provide medical information to the public. Rather, VeriMed acts as a "middleman" in the medical consulting business. VeriMed hires independent contractors like Haines to produce certain content, and then sells that content to websites that have a need for it. Haines was told she was under "no obligation" when working for VeriMed, and was always free to work on projects of her choice. Under this arrangement, Haines reviewed ten urology articles for VeriMed at a rate of $15.00 each.

Around this same time, Haines also developed a relationship with another web content provider, The HealthCentral Network (THCN). THCN owns and operates a collection of websites, including 32 condition-specific websites with more than 11 million monthly visitors and 60 million page views. Haines agreed to provide certain material to THCN for a price that was significantly more than the $150.00 she received from VeriMed.

Unbeknownst to Haines, however, in addition to THCN being a client of Haines' independent consulting business, THCN was also a client of VeriMed. In

fact, it was THCN that had requested VeriMed to produce the urology articles. In other words, Haines was working for VeriMed and THCN separately, but she did not know that the content she produced for VeriMed was actually being supplied to THCN.

THCN and VeriMed had a contractual relationship that was designed to prevent this type of scenario. When THCN agreed to purchase website content from VeriMed, THCN also agreed that it would not "go around" VeriMed and hire any of VeriMed's current or former independent contractors. Specifically, the contract language stated:

> [THCN] will not be able to utilize the services of any present or former VeriMed member that had previously provided services to [THCN], unless such member joins [THCN] in a full-time capacity, without paying VeriMed the agreed upon rates in the corresponding Statement of Work. The following paragraphs shall survive the termination of this Agreement: . . . (Solicitation).

The paragraph headed "Solicitation" then went on to state:

> Solicitation of Personnel. During the term of this Agreement and for one (1) year afterward, neither party shall recruit or solicit for employment any current or former employee or Author of the other.

When THCN learned that Haines was an independent contractor working for VeriMed, THCN terminated its relationship with Haines and told Haines that it would no longer employ her to provide content to THCN directly.

Haines alleges that the agreement between THCN and VeriMed is an unlawful restraint on trade that violates the Sherman Antitrust Act, as well as Missouri and

Florida state antitrust laws. In addition, Haines asserts state law claims of fraudulent misrepresentation, fraudulent concealment, and appropriation of name. VeriMed has moved to dismiss each count of the complaint under various theories.[1]

Discussion

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are construed in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P.; *Bell Atlantic v. Twombly* 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007). Although specific facts are not necessary, the plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007).

A complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all the necessary allegations. *Parnes v. Gateway 2000,*

---

[1] Haines moved to amend her complaint after VeriMed filed its motion to dismiss. For reasons discussed during oral argument, I will grant Haines' motion to amend the complaint and will treat VeriMed's motion as though it relates to the newly amended pleading.

*Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). The issue is not whether the plaintiff will ultimately prevail but whether she is entitled to present evidence to support her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A.  Federal Antitrust Claims

To prove a violation of Section 1 of the Sherman Antitrust Act, "a plaintiff must show an agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade." *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1058 (8th Cir. 2000). Accord *Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554, 558 (8th Cir. 1998). *See also Masimo Corp. v. Tyco Health Care Group, L.P.,* 2006 WL 1236666, *3 (C.D. Cal.2006) ("The elements of a Section 1 case are: (1) an agreement or conspiracy among two or more entities; (2) with the intent to unreasonably restrain competition; (3) which causes injury to competition."). The entities must be legally distinct economic entities. *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 95-96 (2nd Cir. 1998).

"The unreasonableness of a restraint is determined using either a per se standard or a standard that examines all of the circumstances, the so-called rule of reason." *Concord Boat,* 207 F.3d at 1058. Examples of restraints that violate the per se standard include price fixing, tying arrangements, and group boycotts. *Id.; Double D Spotting Serv., Inc.,* 136 F.3d at 558. "Most agreements are evaluated under the 'rule of reason,' a standard that asks whether the contract unreasonably restrains trade in a relevant product or geographic market." *Minnesota Ass'n of*

*Nurse Anesthetists v. Unity Hosp.,* 208 F.3d 655, 659 (8th Cir. 2000). "Ultimately, the goal is to determine whether restrictions in an agreement among competitors potentially harm consumers." *Virgin Atlantic Airways Ltd. v. British Airways PLC,* 69 F. Supp. 2d 571, 582 (S.D.N.Y. 1999).

Haines argues that the agreement in place between VeriMed and THCN ought to constitute a per se violation of the Sherman Antitrust Act, or in the alternative, should be declared unlawful under the rule of reason. According to Haines, defendant's agreement with THCN unfairly restrains the market for contract employees like Haines who provide content to medical websites. Haines styles the arrangement between VeriMed and THCN as an unlawful "no-hire" agreement. That is to say, the two companies conspired to keep employment costs to a minimum by agreeing not to hire away one another's employees. Once VeriMed secured Haines as an independent contractor, it actively worked to prevent any other company from competing for the services Haines offered.

Haines correctly notes that courts have on occasion found certain no-hire agreements to violate or potentially violate antitrust laws. *See Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 545 (10th Cir. 1995) (Plaintiff alleging that two airplane manufacturers conspired to restrain trade by agreeing not to hire one another's workers had adequately pleaded a violation of the Sherman Act.); *Weisfeld v. Sun Chemical Corp.*, 210 F.R.D. 136, 138 (D.N.J. 2002) (denying certification of a class action but discussing the antitrust implications of a no-hire agreement between

competing companies). Haines' argument ultimately fails however, because the agreement to which Haines was subject was not a "no-hire" agreement of the type antitrust laws seek to prohibit.

In some limited sense, Haines is correct that "competition" between VeriMed and THCN for Haines' services was constrained. But Haines was working *for* VeriMed. The agreement's intended purpose was not to constrain competition between VeriMed and THCN, but to constrain competition between VeriMed and Haines herself. VeriMed sought to prevent its own employees from choosing to work for VeriMed's clients directly. This is not a "no-hire" agreement; it's a "non-compete" agreement – a common feature of countless independent contractor relationships in any number of industries.[2] To the extent that the agreement between VeriMed and THCN constrains competition, it does so only to protect VeriMed's legitimate business interests. *See National Society of Professional Engineers v. United States*, 435 U.S. 679, 687-88 (1978) (noting that although the text of the Sherman Act declares "every" restraint on trade to be "illegal," the Act "cannot mean what it says" because to read it literally "would outlaw the entire body of private contract law").

---

[2] At oral argument the Court noted that Haines' case is seemingly indistinguishable from, for example, that of a home healthcare worker who works for an agency. Such a worker is not allowed to go around the agency and provide services to clients directly. Haines' relationship with VeriMed is functionally equivalent to this type of situation.

Haines' argument that this non-compete agreement should form the basis for a new per se violation of antitrust laws is completely without merit. "Legitimate reasons exist to uphold noncompete covenants even though by nature they necessarily restrain trade to some degree. The recognized benefits of reasonably enforced noncompetition covenants are now beyond question." *Lektro-Vend Corp. v. The Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1982). *See also Consultants & Designers, Inc. v. Butler Serv. Group*, 720 F.2d 1553, 1560 (11th Cir. 1983) (calling the argument that non-compete agreements should be a per se antitrust violation "both bizarre and frivolous"); *Cesnik v. Chrysler Corp.*, 490 F. Supp. 859, 868 (D.C. Tenn. 1980) (recognizing that an agreement "precluding two potential employers from competing for the services of a discrete group of employees . . . can best be characterized as a covenant not to compete").

Given that the agreement is properly analyzed under the rule of reason, the next step is to determine "whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 491 F.3d 380, 387 (8th Cir. 2007) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).

Haines' complaint fails to establish an antitrust violation under any of these considerations. The non-compete is limited in specific ways that narrowly tailor the

agreement so as to protect VeriMed's legitimate business interests. Market participants are not precluded from all independent contracting work. Contractors such as Haines remain free to publish as much material as they wish on the Internet. They are merely restrained from selling that material to VeriMed's clients, unless those clients choose to hire the contractors as full-time employees. The very nature of the independent contractor writing and publishing business is such that this type of agreement cannot have a market-wide impact.[3]

Haines' case is very similar to that of the plaintiffs in *Consultants & Designers, Inc. v. Butler Service Group*, 720 F.2d 1553 (11th Cir. 1983). In that case, Butler, a technical services firm, recruited "job shoppers" who worked in fields such as engineering, designing, drafting and data processing. Butler then sent the job shoppers out to serve the needs of Butler's clients – technical businesses that had a need for short-term highly skilled technical workers. *Id*. at 1555. Butler's contracts with its clients specified that neither the client nor Butler would hire one another's employees. Additionally, Butler's job shoppers agreed that they would not

---

[3]VeriMed further argues in its motion to dismiss that Haines' antitrust claims must fail because Haines is unable as a matter of law to define a relevant geographic market for her employment services. Under proper rule of reason analysis, a court must make "an inquiry into market power and market structure to assess the actual effect of the restraint." *Double D*, 136 F.3d at 560 (quoting *Copperweld Corp v. Independence Tube Corp.,* 467 U.S. 752, 768 (1984). Here, the market exists over the Internet and is, by definition, worldwide. In theory, any person anywhere is capable of providing to VeriMed or THCN the type of website content that these companies seek. Moreover, individual actors are always free to publish on the Internet by themselves. Therefore, argues VeriMed, it is not possible for any one actor to assert market dominance. Defendant's argument is an interesting one, but it is not a theory I need consider. Because I conclude that Haines' antitrust claims fail for other reasons stated here, I will not consider VeriMed's arguments relating to geographic market.

accept employment directly or indirectly by a Butler client for a period of 90 days following the completion of an assignment. *Id*. at 1556.

The plaintiff, Consultants & Designers, Inc., was another technical services firm that competed with Butler, recruiting job shoppers and supplying clients with employees. C & D alleged that Butler's agreements with its clients and job shoppers violated Sections 1 and 2 of the Sherman Act. *Id*.

Applying the rule of reason, the Eleventh Circuit held that plaintiff failed as a matter of law to state an antitrust violation. *Id*. at 1564. The court noted that Butler's restrictive covenants impacted two sets of parties – the job shoppers and the client firms. But the covenants did not have an adverse impact on competition of the type that violates the Sherman Act. Rather, the covenants merely imposed contractual obligations that could be freely negotiated by all parties. *Id*. at 1562-63. When Butler offered its job shoppers work, they had as an alternative all the other means of employment in their chosen fields. Similarly, when Butler offered its services to clients, they too had other alternative means of obtaining workers. *Id*. This is exactly analogous to the situation with Haines, VeriMed, and THCN. VeriMed had certain conditions under which it was willing to hire employees and provide services. Nothing in Haines' complaint establishes that these conditions had a market-wide impact that unfairly constrained competition among the entire universe of people working to provide medical content to websites.

Additionally, as the Eleventh Circuit in *Butler* noted, the contract rights retained by an entity such as VeriMed have a market value that can be bought and sold. That is, VeriMed is not in the business of unilaterally barring its employees from seeking work. Rather, it merely sets a price at which VeriMed is willing to relinquish its right to its own employees' services. A VeriMed client is free to hire away any VeriMed employee, provided it does so on a full-time basis, or provided it pays VeriMed the agreed upon rates in the corresponding statement of work. This is a perfectly legitimate way for VeriMed to protect its business interests.

For the reasons stated above, Haines' complaint fails to allege an antitrust injury. That said, however, it would be premature to conclude that Haines' complaint does not allege an injury of any kind. The key difference between Haines' case and that in *Butler* was that Haines never agreed to be restrained from working for other companies. By agreeing to work for VeriMed, Haines unwittingly limited her other available options to seek contract work. She was, in effect, subjected to a non-compete agreement to which she was never made aware. Rather than tell Haines directly that she could not seek work from VeriMed's clients, VeriMed chose only to tell its clients that they could not hire Haines. Haines thus never knew that she would be confined to working only on the projects that VeriMed saw fit to give her. Haines' injury did not arise from an unlawful market restraint; it arose from her own lack of knowledge and VeriMed's failure to disclose material information. The antitrust laws are not designed to redress this type of "informational" injury to a

single plaintiff. They are designed to redress the injuries of consumers when an entire market is unlawfully constrained. The "essential connection" between Haines' injury and the aims of the antitrust laws is missing in this case. *A.D.M. Corp. v. Sigma Instruments, Inc.*, 628 F.2d 753, 754 (2d Cir. 1980).

B. <u>Missouri and Florida Antitrust Claims</u>

Haines also asserts claims under the antitrust laws of Missouri (where Haines resides) and Florida (where VeriMed is based). These claims necessarily fail because Haines cannot maintain a federal antitrust action. The Missouri antitrust law expressly directs that its provisions "shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes." Mo. Rev. Stat. 416.141; *Fischer, Etc. v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 313 (Mo. 1979). The Florida statute similarly contains a provision stating that "any activity or conduct . . . exempt from the provisions of the antitrust laws of the United States is exempt from the provisions [of Florida's antitrust law]." Fla. Stat. 542.20. Because VeriMed is exempt from antitrust liability under Haines' federal claims, Haines' Florida antitrust claims must similarly fail. *Golta, Inc. v. Greater Orlando Aviation Authority*, 761 F. Supp. 778, 782 (M.D. Fla. 1991).

C. <u>Tort Claims</u>

The remaining claims in Haines' complaint are state law tort claims for interference with a business expectancy, fraudulent misrepresentation, fraudulent concealment, and appropriation of name. Haines has alleged that she was

intentionally misled by VeriMed, and that VeriMed's conduct prevented Haines from seeking work and obtaining contracts she was entitled to pursue. These are sufficient allegations to withstand a motion to dismiss. VeriMed's motion will be denied as to these counts.

Conclusion

For the foregoing reasons, plaintiff's federal and state antitrust claims will be dismissed. All other claims in plaintiff's Second Amended Complaint remain pending. Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion [#20] to file a Second Amended Complaint and plaintiff's motion [#22] for leave to file a sur-reply are GRANTED.

**IT IS FURTHER ORDERED** that defendant's motion [#7] to dismiss or in the alternative for summary judgment is GRANTED IN PART and DENIED IN PART. Counts 1 through 6 of plaintiff's Second Amended Complaint are DISMISSED with prejudice. Defendant's motion is denied in all other respects. This case will be set for a Rule 16 Conference by a separate order.

**IT IS FURTHER ORDERED** that plaintiff's motion [#13] to voluntarily dismiss Count 8 of the First Amended Complaint and plaintiff's motion [#15] to deny defendant's summary judgment motion as premature are DENIED AS MOOT.

This case will be set for a Rule 16 Scheduling Conference by separate Order.

                                                  _____
                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2009.